IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE ESTATE OF JAMES DYLAN GONZALES, BY PERSONAL REPRESENTATIVE, DOLLY GONZALES; AND DOLLY GONZALEZ, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>CALVIN BROWN; THE CITY OF PAWNEE, OKLAHOMA; HERB ADSON; LARRY MILLER; MIKE WATERS; PAT LEADING FOX; AND DAVID KANUHO,<br><br>Defendants. | CASE NO. 12-CV-495-JED-PJC |

**OPINION AND ORDER**

The Court has before it several dismissal motions, filed by defendants Mike Waters (Doc. 32), Larry Miller (Doc. 45, 52), David Kanuho (Doc. 54), and Pat Leading Fox (Doc. 55). In addition, in response to the dismissal motions, plaintiff filed a motion, purportedly under Fed. R. Civ. P. 57, seeking a declaratory judgment (Doc. 65). Defendants Calvin Brown, the City of Pawnee, and Herb Adson filed Answers to the Second Amended Complaint (Docs. 26, 27, 28).

**I.     Background**

The following facts, alleged in plaintiff's Second Amended Complaint, are taken as true at the pleading stage. James Dylan Gonzales died on May 1, 2010 after being shot at least six times. He was unarmed at the time of the shooting. Gonzales was noticeably inebriated at the time. Gonzalez and Pat Leading Fox, Jr. (Leading Fox Jr.), who is the son of defendant Leading Fox, went to the residence of Jack Jim Kanuho, who is the son of defendant Kanuho. Defendant Brown, who was Assistant Pawnee Chief of Police, received a radio dispatch that "two Indian

male suspects" were burglarizing the younger Kanuho's residence. Defendant Leading Fox, who is an officer for the Pawnee Nation Police Department, heard the radio dispatch and responded to assist Brown. Four minutes later, Brown stopped a vehicle leaving the complex in which Kanuho's residence is located. The vehicle was occupied by Gonzales and Leading Fox, Jr. Defendant Leading Fox heard Brown provide the vehicle's license plate information over the radio and recognized the vehicle and license plate as belonging to his son. After the vehicle stopped, Gonzales exited the passenger side of the vehicle and fled. Defendant Brown recognized Gonzales, and Leading Fox Jr. confirmed that Gonzales had been with him before fleeing the scene of the stop.

Defendant Leading Fox arrived at the scene, and Brown then began to chase Gonzales on foot but quickly gave up and returned to the vehicle. Leading Fox, Jr. advised the officers that Gonzales was unarmed. Jack Jim Kanuho arrived at the scene of the stop, identified an X-Box game unit, games, and a pair of black jeans as his property. The officers released those items to Jack Jim Kanuho, and Leading Fox, Jr. was also released from the scene. Brown then contacted dispatch and advised that Gonzales was a "suspect on foot." Defendant Miller, who was a Pawnee County Deputy Sheriff, also responded to the dispatch to assist. Another officer, Dennis Walker, was listening to his police radio at home, and he observed Gonzales running. Walker got into his vehicle and ultimately observed Gonzales near the location of the old Pawnee Nursing Home, which was an "abandoned and dilapidated building." Walker was advised not to follow Gonzales into the nursing home, but was directed to wait and watch for any attempt by Gonzales to leave the area.

Defendants Brown, Leading Fox, and Miller arrived at the Pawnee Nursing Home and entered it to find Gonzales. Minutes after their arrival, six shots were fired and hit Gonzales,

killing him. Those defendants falsely alleged that Gonzales stabbed Brown in the face and that the shooting was thus justified.

Gonzales was known in the small community of Pawnee, which has approximately 2200 citizens, and his residential address was known to and readily available to the defendants. The officers' actions in chasing and cornering Gonzales, who was known to be under the influence and/or emotionally disturbed, were deliberately indifferent and objectively unreasonable under the circumstances, as the alleged crime was not serious, the allegedly stolen property had already been returned without being held for evidence, the co-suspect, Leading Fox, Jr., was released without arrest, and Leading Fox, Jr. had advised the officers that Gonzales was unarmed.

As noted above, officers of the City of Pawnee Police Department, Pawnee County Sheriff's Office, and the Pawnee Nation Police Department, were involved in the events leading to the shooting. In addition to suing the involved officers, plaintiff has also sued Herb Adson, the City of Pawnee Police Chief, Mike Waters, the Pawnee County Sheriff, and David Kanuho, the Pawnee Nation Police Chief. Plaintiff alleges that each of these Police Chiefs and Sheriff had a custom and policy of failing to properly train and supervise their underling officers who were involved in the shooting. The alleged failures included a failure to train and supervise the officers as to the legal jurisdiction of tribal law enforcement, the use of excessive force, required pre-shooting duty of care, and how to appropriately respond when dealing with an emotionally upset, inebriated, and fearful young man.

Dolly Gonzales, who is James Dylan Gonzales's mother and the Personal Representative of his Estate, asserts claims on her own behalf and on behalf of his Estate. Her Second Amended Complaint contains two claims under 42 U.S.C. § 1983: one for alleged violations of the younger Gonzales's rights under the Fourth and Fourteenth Amendments; and the second for alleged

violations of his rights under the Fifth and Fourteenth Amendments. The Second Amended Complaint was filed on March 22, 2013, after the expiration of the statute of limitations, and added Larry Miller, Mike Waters, Pat Leading Fox, and David Kanuho (collectively, the "Added Defendants") as defendants for the first time.

## II. Discussion

### A. Tribal Sovereign Immunity

Defendants Leading Fox and Kanuho seek dismissal based, in part, upon tribal sovereign immunity. Tribal sovereign immunity is a matter of subject matter jurisdiction. *Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007). Indian tribes possess the same common law immunity from suit traditionally enjoyed by sovereign powers. *Id.* (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 754 (1998); *see Native American Distrib. v. Seneca-Cayuga Tobacco*, 546 F.3d 1288, 1293 (10th Cir. 2008) (tribal sovereign immunity may only be overcome by Congressional abrogation or a tribal waiver). To abrogate tribal immunity, Congress must unequivocally express that purpose. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001). Similarly, any waiver by a tribe must be unequivocally expressed and clear. *Native American Distrib.*, 546 F.3d at 1293-95; *C & L Enterprises*, 532 U.S. at 518. "[A] tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities." *Native American Distrib.*, 546 F.3d at 1296.

"The general bar against official-capacity claims, however, does not mean that tribal officials are immunized from individual-capacity suits arising out of actions they took in their

official capacities." *Id.* "Rather, it means that tribal officials are immunized from suits brought against them *because of* their official capacities – that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." *Id.* (emphasis in original). The courts thus "ask whether the sovereign 'is the real, substantial party in interest.'" *Id.* at 1296-97 (quoting *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001)). Where the plaintiff seeks money damages from the officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, sovereign immunity does not bar the suit "so long as the relief is sought not from the [sovereign's] treasury but from the officer personally." *Id.* at 1297. But "the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.*

Here, plaintiff has sued defendants Leading Fox and Kanuho in their individual and official capacities. Applying the above-cited law, the official capacity claims against those defendants are barred by sovereign immunity to the extent of the Pawnee Nation's tribal sovereign immunity.

To avoid tribal sovereign immunity as a bar to her claims against Kanuho and Leading Fox, plaintiff in part relies upon a Deputation Agreement, which generally "provide[s] for the cross deputation of law enforcement officers employed by the tribes, the State of Oklahoma, and political subdivisions of the State of Oklahoma, which are a party to [the] Agreement, and the BIA so that the Law Enforcement officers will be authorized to assist the BIA in its duties to provide law enforcement services and to make lawful arrests in Indian country within or near the jurisdiction of the Tribe or [otherwise described in the Agreement]." (Doc. 25-1 at 7-8). Effective February 22, 2006, the Pawnee Nation (through its President, as authorized by its Business Council), Pawnee County (through the Board of County Commissioners and then-

5

Sheriff Roger Price), and The City of Pawnee (through its Mayor and Chief of Police) joined the Deputation Agreement. (Doc. 25-1 at 1-4). The underlying Deputation Agreement was made pursuant to the Indian Law Enforcement Reform Act (ILERA), 25 U.S.C. §§ 2801 *et seq.*

Although the plaintiff has provided the Court with the Deputation Agreement and adopting resolutions by the Pawnee Nation, Pawnee County, and the City of Pawnee, plaintiff has not identified any express, clear, or unequivocal waiver of tribal sovereign immunity by the Pawnee Nation, nor has she cited any action by Congress which has abrogated the Tribe's sovereign immunity. Moreover, on its face, the Deputation Agreement does *not* constitute any waiver of tribal sovereign immunity:

> "Nothing in this Agreement ... conveys any judicial jurisdiction.... Similarly, nothing in this Agreement is intended to impair, limit, or affect ... the sovereignty of any government."
>
> "Nothing in this Agreement shall be construed as a waiver of any government's sovereign immunity, not otherwise expressly waived by legislative act."

(Doc. 25-1 at 10, 13).

Plaintiff further argues that "[s]urely the citizens of the City of Pawnee and the County of Pawnee would have appreciated a vote as to whether they would consent to policing by a Sovereign's officers for whom the Sovereign could deny all responsibility." (Doc. 76 at 4). That may well be true, but plaintiff cites no legal authority to support her suggestion that the sovereign immunity of the Pawnee Nation can be extinguished by the alleged wishes of the citizens of the City of Pawnee, and the Court is not aware of any such authority.

Plaintiff also speculates that the Pawnee Nation "may have coverage which covers liability incurred under the Cross Deputation Agreement and therein may well lie a waiver of sovereign immunity. Whether an insurance carrier is permitted to plead sovereign immunity on a Tribe's behalf is relevant to this cause." (Doc. 76 at 4). Again, plaintiff cites no legal authority

to support her suggestion that the existence of liability coverage for actions of tribal officers would, as a matter of law, vitiate sovereign immunity, and the Court is unaware of any such law.

In a further effort to circumvent the assertion of sovereign immunity by Kanuho and Leading Fox, plaintiff also filed a motion for "declarations" purportedly under the authority of Fed. R. Civ. P. 57 and a related notice that the Rule 57 motion "draws into question the constitutionality of the [Deputation Agreement] and the law of the State of Oklahoma which purports to authorize same despite the sovereign immunity of Pawnee Nation." (Doc. 65, 66). Plaintiff has provided no authority for her purported assertion of a declaratory judgment action by way of a motion, and the Court is aware of no such authority. Rule 57 establishes that the Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." The statute provides that, "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States, *upon the filing of an appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Federal Rules of Civil Procedure expressly define and limit "pleadings" to complaints, answers, and replies. Fed. R. Civ. P. 7(a). A plain reading of Rule 57 and 28 U.S.C. § 2201 make it clear that declaratory judgment must be sought by pleading:

> Any doubt or difficulty about the procedure in actions for a declaratory judgment disappears if the action is regarded as an ordinary civil action, as Rule 57 clearly intends. The incidents of pleading, process, discovery, trial, and judgment are the same.... The request for a declaratory judgment is but a normal part of the ordinary civil action.... As Rule 57 expressly provides, the procedure for obtaining a declaratory judgment must be "in accordance with these rules." Thus, the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions. Consequently the action is commenced by filing a complaint with the clerk and the issuance of a summons by the clerk, as provided in Rules 3 and 4.

Wright, Miller, Kane, Marcus & Steinman, 10B Fed. Prac. & Proc. Civ. § 2768 (3d ed.).

7

Moreover, the motion for declaratory judgment was filed months after the Second Amended Complaint and without leave of Court to file an additional pleading or amendment to her pleading. In her Second Amended Complaint, plaintiff did not request a declaratory judgment, and she did not cite either Rule 57 or the declaratory judgment statute, 28 U.S.C. § 2201. Plaintiff's attempt to inject a declaratory judgment action into this proceeding by a motion filed many months after the filing of the Second Amended Complaint is inappropriate. As noted, she did not seek leave of Court to amend her pleading, although leave is required under Rule 15(a)(2). Her Rule 57 motion is thus **denied**. The Court also notes that, even if she had properly presented any issue regarding the legal propriety of the Deputation Agreement, she still has not identified either an express waiver of sovereign immunity or Congressional abrogation of such sovereignty, as is required to avoid the assertion of tribal sovereign immunity. *See Native American Distrib.*, 546 F.3d at 1293.

Because plaintiff has not properly presented any argument that would undermine the extension of the Pawnee Nation's tribal sovereign immunity to Leading Fox and Kanuho in their official capacities, the dismissal motions of Leading Fox and Kanuho, in their official capacities, are **granted**, and the claims against them in their official capacities are **dismissed**.

With respect to their individual capacities, as noted, tribal sovereign immunity does not automatically immunize tribal officials from individual capacity suits arising out of their own actions. *See Native American Distrib.*, 546 F.3d at 1296. With respect to individual capacity suits, the courts "ask whether the sovereign 'is the real, substantial party in interest,'" and a nominal request from an officer may in fact be against the sovereign if the decree would operate against the sovereign. *See id.* at 1296-97.

In the Second Amended Complaint, the plaintiff purports to seek damages from Kanuho and Leading Fox, rather than from the Pawnee Nation. However, plaintiff's allegations against Chief of Police Kanuho are that, "as Chief/Director of Police for the Pawnee Nation Police Department," he had a custom or policy of failing to properly train and supervise Leading Fox, and that "custom or policy was in deliberate indifference to the constitutional rights of [Gonzales]." (Doc. 25 at 10, ¶ 41). The Court agrees with Kanuho that the Pawnee Nation appears to be the "real, substantial party in interest" as to the allegations against Kanuho. Kanuho is not alleged to have had any personal involvement in the shooting death of Mr. Gonzales. Instead, any alleged failure to train or supervise Leading Fox would have been conducted solely in his role as Chief of Police for the Pawnee Nation. In response to Kanuho's argument that the allegations of the Second Amended Complaint make it clear that the Pawnee Nation is the real party in interest, plaintiff presents a jumbled argument which relies in part on her motion for default judgment and includes a request that she be allowed "additional discovery on Kanuho's involvement...." (Doc. 76 at 6). Particularly in light of the fact that sovereign immunity is an issue of subject matter jurisdiction, plaintiff must have had some basis to bring a claim against Kanuho and, by her own allegations, she has already obtained certain discovery in this action which led her to add claims against the Added Defendants, yet she has not been able to identify any personal involvement by Kanuho. The Court concludes that the allegations of the Second Amended Complaint establish that, as to plaintiff's allegations regarding Kanuho, the real party in interest is the Pawnee Nation. Accordingly, her claims against Kanuho in his individual capacity are also barred by sovereign immunity, and Kanuho's motion to dismiss the claims against him in his individual capacity is **granted**.

However, at this time, plaintiff has supplied enough factual allegations regarding the personal involvement of Mr. Leading Fox that the Court finds that plaintiff has stated a claim against him in his individual capacity. According to the allegations in the Second Amended Complaint, Leading Fox entered the Pawnee Nursing Home building, was present when Gonzales was shot and killed, and participated in the fabrication of a story to falsely justify the use of excessive, deadly force. Those allegations state a claim against Leading Fox in his individual capacity, and the Pawnee Nation does not appear to be the real party in interest on such a claim. Leading Fox's motion to dismiss the claims against him in his individual capacity, to the extent premised upon sovereign immunity, is **denied**.

### B. Statute of Limitations

The Added Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(6) based upon their assertion that it is plain from the allegations of the Second Amended Complaint that plaintiff's § 1983 claims against them are time-barred. "A hodgepodge of state and federal law governs the timeliness of claims" under § 1983. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits." *Id.* Federal law "determines the date on which the claim accrues and the limitations period starts to run." *Id.* State law governs tolling, although federal law may allow additional equitable tolling in rare circumstances. *Id.* In this case, plaintiff's § 1983 claims are governed by a two-year statute of limitations, which is the period governing personal injury claims under Oklahoma law. *See Okla. Stat.* tit. 12, § 95(A)(3); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005); *Meade v. Grubbs*, 841 F.2d 1512, 1522-24 (10th Cir. 1988).

Plaintiff's son was fatally shot on May 1, 2010, and the two year statute of limitations on plaintiff's claims expired on May 1, 2012. Plaintiff initiated her suit in state court on the last day of the limitations period, May 1, 2012. Her initial petition named the Town of Pawnee, Town of Pawnee Police Department, "John Doe, a Town of Pawnee Police Officer," and Herb "Adeson" [sic], Town of Pawnee Police Chief. (Doc. 2-1 at 1). A few days later, she filed a First Amended Petition, which changed the naming of the defendants to Calvin Brown, The City of Pawnee, Oklahoma, and Herb Adson, Chief of Police for the City of Pawnee. (*Id.* at 4). In her First Amended Petition, plaintiff eliminated the reference to "John Doe, a Town of Pawnee Police Officer," and added Calvin Brown as a defendant in his place. (*See id.* at 1). After the case was removed to federal court, the Court permitted plaintiff to file a Second Amended Complaint. (Doc. 25). Her Second Amended Complaint was filed on March 22, 2013, after the expiration of the statute of limitations, and added Larry Miller, Mike Waters, Pat Leading Fox, and David Kanuho as defendants for the first time. (*See id.*). Thus, the Added Defendants assert that the plaintiff's claims against them are time-barred.

Because the Added Defendants were added after the expiration of the statute of limitations period, the plaintiff's suit against them is timely only if it relates back to the date of the original pleading. An amendment that changes the party or the naming of a defendant relates back to the date of the original pleading if (1) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading and (2) within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's

identity.  Fed. R. Civ. P. 15(c)(1)(B), (C).  These requirements are applicable to the addition of a new defendant by amendment.  *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).

Plaintiff asserts that the Second Amended Complaint relates back to the original pleading because, after the expiration of the statute of limitations, she received a report of the Oklahoma State Bureau of Investigation (OSBI) and, before receipt of that report, she was "left with the mistaken position – despite speculation to the contrary given the surreal number of law enforcement officers from numerous agencies present at the death scene of James Dylan Gonzales – that Defendant Calvin Brown was the only law enforcement officer in close proximity to the deceased at the time of his death...."  (Doc. 76 at 8).  Plaintiff also asserts that "Officer Brown's version of the events of that evening are put at issue by the contents of [the] OSBI Report" such that "the involvement of the [Added Defendants] was not elucidated until such time as the OSBI Report was received."  (*Id.*).  Plaintiff asserts that, under *Krupski v. Costa Crociere S.p.A*. 560 U.S. 538 (2010), those facts are sufficient to establish that the Second Amended Complaint's inclusion of the Added Defendants relates back to the date of her original, timely pleading.  In *Krupski*, the Supreme Court interpreted mistake to include cases in which a plaintiff knows of a party's existence but misunderstands the role a party played in the conduct or occurrence giving rise to her claims.  *See id.* at 549.

Assuming that plaintiff has alleged a mistake sufficient to trigger the relation back test of Rule 15(c)(1)(C), that does not end the inquiry.  Plaintiff must also establish that, within 120 days of the filing of her original Petition (by August 29, 2012), each of the Added Parties "(i) received such notice of the action that it will not be prejudiced in defending on the merits and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C); *see also Krupski*, at 549-54

12

(after determining that a misunderstanding as to a party's role could be a "mistake" under Rule 15(c)(1)(C), the Court continued, analyzing whether subsections (i) and (ii) were satisfied).

With respect to notice, plaintiff alleged in her motion for leave to file her Second Amended Complaint that "[b]y the significant involvement of members of the Pawnee Nation Police Department and the Pawnee County Sheriff's Office in the events giving rise to this cause as evidenced by the reports generated during the investigation of same, counsel submits the agencies and their representatives had notice of the events giving rise to this suit and will not be prejudiced in defending on the merits of this action if joinder is granted." (Doc. 23 at 3). Notice of the "events giving rise to this cause" is not notice of *this action*, as required under Rule 15(c). However, plaintiff notes that the events were highly publicized and she suggests that the OSBI report indicates that the Added Defendants had notice. That Report has not been supplied to the Court and, on a Fed. R. Civ. P. 12(b)(6) motion, it would be inappropriate for the Court to consider that report. Plaintiff also indicates that, because the relevant issues are the Added Defendants' knowledge, the limitations issue should not be determined at the pleading stage.

At this time, the Court concludes that the statute of limitations / relation back issues should be determined at the summary judgment stage, upon a relevant evidentiary record, rather than upon speculation as to what notice the Added Defendants had of the action and what they knew or should have known. Accordingly, the motions to dismiss of defendants Waters, Miller, and Leading Fox are **denied** to the extent based upon the applicable statute of limitations. The Court has *not* determined that the Second Amended Complaint relates back to the date of the original petition; instead, the Court will determine that issue if and when requested upon any motion for summary judgment.

### III. Conclusion

As the Court has found that plaintiff's claims against David Kanuho, in his official and individual capacities, are barred by sovereign immunity, Kanuho's motion to dismiss (Doc. 54) is **granted**, and all claims against Kanuho are dismissed, without leave to amend. Pat Leading Fox's motion to dismiss (Doc. 55) is **granted in part and denied in part**; plaintiff's claims against Leading Fox in his official capacity are dismissed, but plaintiff may maintain her claims against him in his individual capacity. The motions to dismiss filed by Larry Miller (Doc. 45, 52) and Mike Waters (Doc. 32) are **denied** at this time.

Plaintiff's motion seeking declaratory judgment (Doc. 65) is **denied**.

In accordance with Fed. R. Civ. P. 12(a)(4), the Added Defendants (except Kanuho) shall file answers within 14 days of the filing of this Opinion and Order. The parties shall file a Joint Status Report on or before **October 24, 2014**.

SO ORDERED this 23rd day of September, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE